# Staunton.

## ISAAC EBERLY & CO. v. GIBSON AND OTHERS.

### September 12, 1907.

1. ESTOPPEL—*Assignment Induced by Debtor—Promise to Pay Assignee—
   Fraud.*—If a debtor induces a third person to take an assignment of
   his notes by his assurance made beforehand that "the notes are all
   right," or if, after assignment and notice thereof, the debtor ex-
   pressly or impliedly promises the assignee to pay the notes, and the
   retraction of such promise would operate as a fraud upon the as-
   signee, in either event the debtor is estopped from setting up any
   equity or defense he may have against the assignor, however well
   founded it may originally have been. After the notice of the assign-
   ment and the promise to pay to the assignee, no subsequent trans-
   actions between the assignor and the debtor can invalidate the notes
   in the hands of the assignee.

Appeal from a decree of the Circuit Court of Buchanan
county. From a partial decree in favor of the complainants,
they appeal.

*Reversed in part.*

The opinion states the case.

*Routh & Routh* and *Williams & Witten,* for the appellants.

*Finney & Stinson,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

It appears that Paris Charles was, on June 3, 1904, and prior
thereto, engaged in the retail mercantile business, buying his

stock from wholesale merchants in the usual manner; that on the date named he sold his stock of merchandise in bulk, invoicing at $1,700.44, to B. G. Gibson; that Charles was indebted to the Isaac Eberly Company, complainant in the court below, and appellant here, a wholesale company, in the sum of $995.35 for goods sold him; that Charles was indebted to other merchants in various sums for goods equal in value to the stock sold to Gibson; that the sale to Gibson was not in the ordinary course of trade, but with the intent on the part of Charles to quit the mercantile business; that Charles and Gibson made no inventory of the goods at the time of the sale, as required by the statute (now section 2460a, Va. Code, 1904), nor complied with any of the other provisions of the statute; that Gibson paid Charles on the stock of goods that day taken possession of by Gibson, $400 in cash, two mules at the value of $400, and executed notes for the balance of the purchase money to Charles, two of which notes (one for $300, due eight months after date, June 3, 1904, with interest from date, and another for $300, bearing the same date, due twelve months after date, with interest from date), were, on July 14, 1904, duly assigned by Charles to appellant for a valuable considera-- tion, and when collected, were to go as a credit on the debt of Charles to appellant, above mentioned; that after the assignment of these notes and on the same day, Gibson was notified by appellant of the assignment, and he assured appellant that the notes were all right and promised that he would pay them at maturity, even going to the extent of saying that he would pay them before maturity if a discount would be allowed upon them, but refused to give any security for their payment. At this interview between appellant's agent and Gibson, the latter's attention was called to the statute above referred to, which provides that it shall be unlawful for any merchant buying and selling merchandise, while he is indebted to any person, to sell his entire stock of merchandise in bulk, or to sell the major portion thereof otherwise than in the ordinary course of trade,

in the regular and usual prosecution of the seller's business, etc., and that if the terms of the statute prescribing in what manner and under what conditions a merchant engaged in buying and selling merchandise may sell his entire stock in bulk, or the major portion thereof otherwise than in the ordinary course of business, etc., were not complied with, the sale would *prima facie* be presumed to be void and fraudulent as against the creditors of such seller, and the merchandise, or such other part thereof, as might be found in the hands of the purchaser, should be liable to the creditors of the seller; and in the event that the same, or any part thereof, be withdrawn by the purchaser, then the purchaser himself should be liable to the creditors of such seller for the merchandise so received by him and thus withdrawn. Upon obtaining this information from appellant's agent, Gibson declared that he did not know of the statute, and that he was sorry that he did not know of it sooner, as he had paid off one of the notes executed by him to Charles, the note so paid off being held by an assignee of Charles other than appellant, or Charles himself. On the following day, namely, the 15th of June, 1904, Gibson executed, delivered and had recorded in the clerk's office of Buchanan county, a deed to his wife, conveying to her, in consideration of $800, said to have been in hand paid, a tract of land situated in that county, containing two hundred and three acres; and, on July 30, 1904, notwithstanding declarations on his part to the agent of appellant that he still had the stock of goods in question in possession, and intended to hold on to them, he made a pretended resale of what remained back to Charles, without any pretence of complying with the provisions of the statute, *supra;* whereupon Charles, on the same date, executed to one C. W. McCoy, trustee, a deed of trust on this stock of goods to secure to the creditors of Charles, other than appellant, the one $1,100, and the other $466. It further appears that, from the time Gibson obtained this stock of goods from Charles, on the 3rd day of June, 1904, to the date of his pretended resale of the

same to Charles, on July 30, 1904, he had sold of the goods the amount of $235.77; so that the invoice price of the goods at the pretended resale to Charles was $1,464.67.

At the second August rules, 1904, appellant filed its original bill in this cause (which is the only bill copied in this record), setting out the foregoing facts, and relying upon them as showing that the deed from Gibson to his wife, as well as the pretended resale of the stock of goods by Gibson to Charles, were fraudulent transactions, made and had for the purpose of defrauding the creditors of Charles, especially appellant, and charging that Gibson was liable to appellant not only for the $235.77 realized by him from the sale of a part of the goods while in his possession, but for the two notes of $300 each, above mentioned, and that appellant was entitled to a lien therefor upon the tract of land which Gibson had fraudulently conveyed to his wife.

Upon the hearing of the cause upon the bill, the answer of Gibson, and depositions of witnesses, the circuit court held that appellant was not entitled to recover of Gibson the amount of the two notes of $300 each, executed by Gibson to Charles. and by the latter assigned to appellant and sued on, but that Gibson was liable to the creditors of Charles for the difference between the amount of the goods turned over to him by Charles and the amount of the goods returned to Charles by Gibson, namely, the difference between $1,700.44 and $1,464.67, and interest thereon; and that the same should be paid to appellant, the first and only creditor attacking that transaction; and it was adjudged, ordered and decreed that appellant recover of Gibson the sum of $235.77, with interest thereon, from the 30th day of July, 1904, until paid, and costs of its suit; and that, as to this recovery the deed executed on the 15th day of July, 1904, by Gibson to his wife, Cordelia Gibson, conveying certain lands therein described, was not made for a consideration deemed valuable in law, but was made with intent to hinder, delay and defraud appellant, as a creditor of B. G. Gibson, and,

therefore, was fraudulent and void as to its debt against Gibson; and that this decree be a lien upon the lands in question, to be enforced by proper decree to be thereafter entered in the cause.

From this decree the appeal under consideration is taken, and we are asked to reverse it only in so far as it holds that the two notes executed by Gibson to Charles for $300 each, and assigned by the latter to appellant, are void and uncollectible because of failure of the consideration for which they were executed, the effect of the decree being that the sale of the stock of goods from Charles to Gibson having been made without a compliance with the provisions of the statute, *supra,* the transaction was void, and, therefore, the consideration for which the notes in question were executed, failed.

Besides the fact already mentioned, that after the assignment of these notes to appellant, Gibson not only recognized them as valid obligations, which he was bound in law to meet, but expressly promised appellant that he would pay the notes, the statute does not declare that the sale of the goods was fraudulent and void as to Gibson, the buyer, but only that the sale was *prima facie* presumed to be fraudulent and void as to the creditors of the seller, and further, that the merchandise in the hands of the purchaser, or any part thereof, if it be found in his hands, should be liable to such creditors, and in the event that the same or any part thereof be withdrawn by the purchaser, then the purchaser himself, personally, shall also be liable to said creditors of such seller, to the extent of the merchandise so received by him and thus withdrawn.

The contention of appellant is that, after notice to appellee, Gibson, of the assignment of the notes to appellant, Gibson and Charles could by no subsequent transaction invalidate the notes in the hands of the assignee; and this contention is clearly sound. The notes in the hands of appellant were only subject to any equities between Charles and Gibson prior to notice of the assignment, and it is not pretended by Gibson or anyone else

that any such equity existed at the time of the assignment, and notice to him on July 14, 1904; and had there been, his express promise to pay, and assurances to the representative of appellant that the notes were all right, would have destroyed even such prior equities, much more any arising after notice of the assignment. This principle is rightly carried in such a case so far as to work an estoppel against the debtor and .the assignor. The express promise of Gibson to appellant to pay these notes, and his assurances that they were all right, meant, of course, that he had no prior equities to set up against them, and concluded him as to any right by a transaction with Charles to render the notes void and uncollectible. Had he not attempted to do this, as he gave assurances that he would not do, the goods would have remained in his possession and been liable to appellant for the payment and satisfaction of the notes in question, by virtue of section 2460a of the Code, relied on by the circuit court as giving appellant a lien upon the money received by Gibson from a sale of a part of the goods while they were in his possession.

According to the answer of Gibson, there was no fraud or dishonesty in his purchase of the stock of goods in question from Charles, and hence it was an innocent and valid purchase; therefore, the *prima facie* fraud was eliminated, and Gibson was the owner of the goods free from any consequences and results imposed by the statute, *supra,* under no obligations to the creditors of Charles, and was clothed with the right to hold the goods by payment, either directly to Charles or to his assignee, of the invoice price thereof evidenced by the notes he had given, so that the notes were for a legal and valid consideration, and Gibson could not, by his own act, relieve himself of the express promise to pay them to appellant.

In *Stebbins* v. *Bruce,* 80 Va. 389, while it is held to be settled law in this State that the assignee of non-negotiable paper stands in the shoes of his assignor and takes subject to all defenses of the debtor against the assignor existing before notice

of assignment, it is further held that where, after notice of assignment, the debtor expressly or impliedly promises to pay the debt, he is estopped from setting up any defense he had against the assignor. The opinion in that case recognizes the correctness of the statement of the law in the authorities cited, to the effect that, while no acknowledgment made after an assignment will prevent the debtor from proving, if he can, any equity against the assignor before he had notice of the assignment, he will be estopped from setting up any equity or defense, however well founded originally, if by his assurance made beforehand he has induced the assignee to acquire the debt; and that the assignee in general only holds an equitable interest in the assigned instrument. This statement of the law is declared to be subject to the qualification, that where, after notice of the assignment the debtor expressly or impliedly promises the assignee to pay the debt, he will be concluded thereby, if the retraction of such promise would operate as a fraud upon the assignee. "In this and other like cases," says the opinion, "where the assignee has been influenced to act, or to refrain from taking action, by the representations of the debtor, to permit the latter to repudiate those representations to the injury of the former, would be contrary, no less to the well-settled rule of the common law, than to the plainest principles of natural justice. And the same principle prevails in equity."

This qualification of the rule of law in that case applies with full force to the case at bar, for it plainly appears from the facts already stated that the effort on the part of appellee, Gibson, to retract his promise to appellant to pay the two notes in question, operated as a fraud upon the appellant. Relying upon the promises and assurances given by Gibson that the notes were all right, and that he would pay them, appellant took no action to enforce its indebtedness against Charles, and, without any notice whatever to appellant, Gibson permitted the stock of goods to be withdrawn by Charles, so that the latter could and did put them beyond the reach of appellant by con-

veying title thereto and transferring the possession thereof to a trustee for the benefit of the creditors of Charles other than appellant.

Ignorance of the law could not avail Gibson, and to permit him, under the facts and circumstances appearing in the record, to retract his assurances to appellant with reference to the two notes in question, or to repudiate his express promise to pay them, would operate, in our opinion, as a fraud upon the rights of appellant, and be not only contrary to the established law, but to the "plainest principles of natural justice." *Stebbins v. Bruce, supra;* 2 Min. Inst. 326; 1 Greenleaf on Ev. (15 ed.) sec. 207; 2 Pom. Eq. (3rd ed.) sec. 812.

For these reasons, we are of opinion that the decree of the circuit court, in so far as it holds that the appellant is not entitled to recover of the appellee, B. G. Gibson, the two notes of $300 each, executed by Gibson to Paris Charles, and by the latter assigned to appellant, is erroneous; and we are further of opinion that appellant is entitled to a lien on the tract of land conveyed by Gibson to his wife by deed of July 15, 1904, for the amount of said notes, with interest thereon from their maturity, as well as the lien for the sum of $235.77, with interest thereon from the 30th day of July, 1904, until paid, with the costs of this suit, as decreed by the circuit court; therefore, the said decree, to the extent that it denies appellant the right to recover of Gibson the amount of said notes and a lien upon said land as security for their payment, will be reversed and annulled, and the cause remanded to the circuit court to be further proceeded with in accordance with this opinion.

*Reversed in part.*