MERCHANTS & MANUFACTURERS BANK, Respondent, vs.
TERRACE REALTY COMPANY, Appellant.

*January 14—March 9, 1920.*

*Arbitration: Parol evidence to make agreement definite and certain: Abatement of action: Assignments: Acceptance of sum stated subject to specific deductions: Effect: Estoppel: Reliance: Forbearance to sue.*

1. In an action on a note, where the defendant pleaded in abatement that there had been an agreement to arbitrate the differences between the parties which had not been carried out, and the correspondence relating to the agreement did not specify the subject matter of the proposed arbitration, it was proper for the court to receive oral testimony of the surrounding circumstances.

2. A property owner which accepted in writing an assignment of an amount due from it to a paving contractor subject to deductions arising from the filing of mechanics' liens, and stated the amount which would be due the contractor in the absence of such deductions, impliedly excluded its right to make any other deductions from the amount stated.

3. Where the assignee of a paving contractor, relying on an acceptance of the assignment by the property owner subject only to deductions for mechanics' liens, extended the time for payment of the contractor's debt to the assignee, its forbearance was sufficient, in such a situation, to estop the property owner from claiming other deductions.

OWEN, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

In August, 1912, the Northwestern Concrete Company entered into a contract with the defendant for laying a concrete roadbed on Cleveland avenue in the village of Shorewood, adjoining Milwaukee, and gave a written guaranty to repair or replace any and all defective work or materials and to keep the concrete bed and job in repair for the term of five years from the completion of the work; and in July, 1914, a similar contract for work on Stowell avenue was made with a similar guaranty.

The same company had also contracts for doing the same

kind of work in Shorewood with the Anderton-Smith Realty Company and Nathanael Greene.

In August, 1914, the Northwestern Concrete Company owed the plaintiff bank about $6,000. This was reduced by December 19th of the same year to $3,500. At that time the plaintiff bank insisted upon security for such account and two notes were executed of $1,750 each, and to secure one of them an assignment was made of all the amounts due the Northwestern Concrete Company from the defendant. .

By letter of December 19th the plaintiff requested defendant to consent to such assignment, and on December 24th a letter was written signed on behalf of the defendant by Nathanael Greene, its secretary, and containing the following:

"We hereby accept such assignment, subject, however, to deduction by us for any amounts expended by us in contesting the filing of any liens of any of the materialmen furnishing the material for the work performed by the Northwestern Concrete Company.

"On October 1, 1915, unless there are to be deductions made in accordance with the foregoing paragraph, there will be due $1,703.50."

Thereafter efforts were made by plaintiff to collect on its account, but without success, and nothing was thereafter paid, except that after the Northwestern Concrete Company went into bankruptcy in February, 1916, a dividend amounting to $146.81 was paid on the plaintiff's claim on the two notes.

Before suit was brought a conference was had between the attorneys of the respective parties and subsequent correspondence suggesting the disposing of the question as to whether there was a setoff in favor of the defendant to be applied in reducing the amount of the guaranty.

During such correspondence defendant's counsel suggested appraisers "to determine whether or not there is any

defect in the pavement constructed by the Northwestern Concrete Company and the amount of damage." This was answered by letter saying: "This plan is agreeable to us if we can agree upon the instructions to be given to the appraisers."

Defendant's counsel again writes: "The appraisers shall determine whether or not the pavements constructed by the Northwestern Concrete Company on Stowell place and Beverly road (being Cleveland avenue) were constructed in a first-class and workmanlike manner and shall determine whether or not it will be necessary to repair or replace any defective work or material, or repair the concrete bed and top, under the guaranties, and shall determine the amount of damage, if any," and suggesting that the expense of the appraisers should be paid by the plaintiff if damage was found. Some objection was raised to this last feature, but finally defendant's counsel wrote it was willing to share the expense of appraisers and notified plaintiff's counsel of its selection for one appraiser. The receipt of this is acknowledged, and there is no further correspondence but apparently subsequent communications by telephone and interviews.

At no time at this stage of the negotiation was any specific reference made to the fact that there were guaranties in existence to others than the defendant or that such guaranties included the condition of keeping the work in repair for the term of five years from the completion thereof, and not until later, when copies of the guaranties intended to be relied upon by defendant were furnished to plaintiff's counsel at their request, were such questions disclosed.

Disputes then arose between counsel as to whether the damages were to be assessed as of the date of the appraisal or to include the element covered by the five-year guaranty.

Subsequently this suit was brought in the civil court of Milwaukee county. The defendant interposed a plea in abatement to the effect that there had been an agreement to

arbitrate the questions between the parties which had as yet not been carried out and that the action was therefore prematurely brought.

By reply the plaintiff raised an issue as to whether the proposed agreement for arbitration was upon the basis of the guaranties given to the Anderton-Smith Realty Company as well as upon those given only to the defendant.

The plea in abatement was first tried, and it was held by the civil court that the agreement to arbitrate was not sufficiently definite in its terms to be enforceable, in that it did not specify whether it was to be upon alleged guaranties to defendant alone and as to whether it included the five-year clause, and for those reasons found in favor of the defendant. From the order dismissing the plea in abatement an appeal was taken to the circuit court, and on the hearing before W. J. TURNER, judge of the circuit court, the order of the civil court was confirmed and the record was returned to the civil court to dispose of the case upon the merits.

Trial was then had in the civil court and findings made to the effect that the Northwestern Concrete Company, for a valuable consideration, duly assigned by writing to the plaintiff its account with the defendant.

That by the letter of December 24th, quoted above, plaintiff accepted such assignment as collateral security and relied thereon in renewing the notes of the Concrete Company for the sum of $3,500, and thereby materially altered its position with reference to the collection of the said notes.

That the construction of the pavement in question was defective, and that the defendant suffered damages in excess of $1,703.50 prior to the date of the assignment and within the five-year period referred to in said guaranty.

And upon the conclusions of law he directed judgment in favor of the plaintiff, dismissing the defendant's counterclaims.

An appeal was taken from said judgment to the circuit court and there affirmed, and from such judgment of affirmance the defendant has appealed.

For the appellant there was a brief by *Rix & Barney,* attorneys, and *David A. Sondel,* of counsel, all of Milwaukee, and oral argument by *Carl B. Rix.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

ESCHWEILER, J.   On the plea in abatement there was a substantial issue of fact raised as to whether there was a definite meeting of the minds of the parties as to the subject matter of the proposed arbitration.   The language used in the correspondence between the parties did not definitely specify such points and it was therefore proper to receive oral testimony of the surrounding circumstances in order to make such matters definite and certain, if possible. Upon such evidence the court might properly find that that which defendant's counsel had in mind as being intended to be covered and included by the arbitration was not the same thing as that which was within the contemplation of plaintiff's counsel, and, having found in favor of the defendant on such issue, we see no ground now for disturbing such judgment.

No question is raised but that under the assignment as executed by the Northwestern Concrete Company to the plaintiff and under the provisions of sec. 2606, Stats., the defendant could have successfully interposed as a complete defense to this action by the plaintiff the setoff or counterclaim arising by reason of the breach of the guaranty to defendant by the Northwestern Concrete Company as found by the civil court, except and unless by its letter of December 24, 1915, set forth in the statement of facts above, it is prevented from now asserting such defense.

It is contended by appellant that the letter of December 24th contains no promise to pay the amount of $1,703.50 mentioned therein, and went no further than to acknowledge the correctness of the amount stated of the unpaid account of the Northwestern Concrete Company with the

defendant and the further fact that the bank was by such assignment now the owner thereof, and it is claimed that from the testimony of Mr. Greene, defendant's secretary and the writer of the letter of December 24th quoted above, he intended thereby to say no more than that if there was anything legally due from the defendant to the Northwestern Concrete Company on October 1, 1915, the defendant was willing to pay such amount, if any, to the bank on account of such assignment.

The defendant was under no legal obligation to make any statement whatsoever with reference to the amount due from defendant to the Northwestern Concrete Company or to make any statement concerning the same. Having elected, however, to do so, as embodied in its letter of December 24th, and having therein undertaken to make a positive statement of its accepting the assignment subject to certain possible deductions that might arise by reason of the filing of liens by any materialmen for the work, and that unless deductions were to be made in accordance with such exception there would be a definite sum due on the following 1st of October, it must be held to have thereby, by implication, excluded its right or intention to assert any other possible deduction from such account, and to have given an express recognition of a sum then payable except for the certain contingencies therein mentioned, and this case, therefore, is squarely within the holding in *Batavian Bank v. M., St. P. & S. S. M. R. Co.* 123 Wis. 389, 101 N. W. 687.

As found by the court, the plaintiff, in reliance upon the acceptance of such assignment and upon such assignment, extended the time for the payment of the then existing obligations of the Northwestern Concrete Company. Having so acted, there was sufficient in such a situation to bind the defendant to the statements in its letter of December 24th by way of estoppel.

*By the Court.*—Judgment affirmed.

Owen, J. (*dissenting*).   I regard the result in this case as exceedingly harsh and one to be avoided unless made imperative upon the plainest considerations.   As the result of a courteous, good-faith communication made by defendant to the bank it has been deprived of a valuable right, and this, it seems to me, without consideration moving to it or injury resulting to any one.

The Concrete Company had been indebted to the bank for a long time.   The bank had exerted most strenuous efforts to secure a reduction of the indebtedness.   When it had been reduced to $3,500 it took the assignment here in question, which represented the very last available asset of the Concrete Company, as satisfactorily appears from the record in this case.   Having secured the assignment, it communicated the facts to the *Realty Company.*   The letter of Mr. Greene, representing the *Realty Company,* set forth in the statement of facts, followed.   Thereafter an extension of time on the indebtedness was granted, and it is said three indorsers of the note of the Concrete Company were released.   As I understand the majority opinion it is held that, by reason of the extension of the time and the releasing of the indorsers, the *Realty Company* is now estopped to deny that the amount mentioned in the letter of Mr. Greene is due upon the account.   To my mind estoppel does not arise upon these facts.   Two essential elements are lacking: (1) the representation as to the amount due upon the account was not made with any thought, much less an intent, that it should be relied upon by the bank in its future conduct or dealing with the Concrete Company.   This is an essential element of an equitable estoppel.   16 Cyc. 726; *Norton v. Kearney,* 10 Wis. 443.   (2) The bank did not act in reliance upon this representation to its injury.   True, it extended the time and released three sureties.   But the evidence is conclusive to my mind that it lost nothing by either operation.   It had everything that the principal debtor possessed.   The Concrete Company went into bankruptcy

soon thereafter.    The three indorsers were also bankrupts, and when the bank released them upon the note it surrendered nothing. The result is that the amount of the damages which the *Realty Company* sustained by reason of the defective pavement has been taken from it and given to the bank without any consideration either in law or equity.

This result is also to be regretted from the standpoint of public policy.    The only safe course that a debtor can pursue is to decline to give an assignee of the indebtedness any information whatever concerning the status of the account. His courtesies in such respect are likely to react upon him in the form of an estoppel and deprive him of the defenses which sec. 2606, Stats., reserves to him.

The case of *Batavian Bank v. M., St. P. & S. S. M. R. Co.* 123 Wis. 389, 101 N. W. 687, certainly went far enough in implying a promise to pay from a mere business courtesy, and it is to be hoped that this case marks the limit.