**NELLO L. TEER COMPANY, a corporation, Defendant and Third Party Plaintiff Below, Appellant,**

v.

**The KANAWHA VALLEY BANK, a corporation,**

and

**The Raleigh County Bank, a corporation, Plaintiffs Below, Appellees.**

No. 7027.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1955.
Decided Nov. 7, 1955.

Vincent V. Chaney, Charleston, W. Va. (Kay, Casto & Chaney and Robert H. C. Kay, Charleston, W. Va., on brief), for appellant.

Thomas B. Jackson, Charleston, W. Va., and Charles T. Ross, Jr., Beckley, W. Va. (Andrew L. Blair, G. J. Triplett, Jackson, Kelly, Holt & Moxley, Charleston, W. Va., and Ross & Ross, Beckley, W. Va., on brief), for appellees.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and THOMSEN, District Judge.

THOMSEN, District Judge.

Nello L. Teer Company (Teer), defendant below, 128 F.Supp. 325, appeals from a summary judgment in favor of plaintiff banks in consolidated actions, brought to enforce the obligations assumed by Teer in connection with certain invoices for work done by S. A. Furrow, a sub-contractor of Teer on a turnpike job, which were assigned by Furrow to the Raleigh County Bank. Teer accepted the assignments and promised to pay the amount of the invoices in accordance with a letter which it had written to the Bank. Some of the invoices were reassigned to the Kanawha Valley Bank; its rights are the same as those of the Raleigh County Bank, and the latter will be referred to herein as "the Bank".

Teer entered into a contract with the West Virginia Turnpike Commission to construct a part of the Charleston-Princeton Turnpike, and employed Furrow under a sub-contract dated February 18, 1954, to haul stone for the base under the turnpike's concrete surface. Furrow agreed to haul at least 20,000 tons per work day at 26.5 cents per ton; if he failed to do so, Teer had the right to hire additional equipment to make up the 20,000 tons, and to deduct the cost thereof from monies due Furrow for work performed. Furrow was to finance his own operations, and was to be paid on the basis of approved current estimates, less 10% retainage, within five days after Teer received payments from the Turnpike Commission. Aetna Casualty and Surety Company became Furrow's surety for the performance of the work covered by the sub-contract, and for the payment of persons furnishing labor and materials to Furrow for use in the prosecution thereof.

Before the sub-contract was executed on February 18, 1954, Furrow took cer-

tain steps to finance the work. On February 17, 1954, Furrow wrote Teer:

"You will please consider this letter as your authorization to pay all estimates due me on your Contract 30 to the Raleigh County Bank, Beckley, West Virginia. These payments are to be made after you have deducted all monies owed to you by me for petroleum products, etc. Such payments are to be made to the Raleigh County Bank from the first monies due me after the above mentioned deductions."

On the same day Teer wrote the Bank:

"Relative to the hauling contract on our Contract 30, West Virginia Turnpike Commission between S. A. Furrow and Nello L. Teer Company, Mr. Furrow has given us a letter of authorization for payment of all estimates to be made to you. Such payments are to be made from the first monies due him after the deduction of all monies owed by S. A. Furrow to Nello L. Teer Company for petroleum products bought by us for Mr. Furrow's account.

"It is agreed that such payments will be made to you upon receipt of our estimates from the West Virginia Turnpike Commission."

On February 18, 1954, the Bank wrote Furrow (with carbon copy to Teer):

"You have requested a line of credit with our bank not to exceed $25,000.00 to permit you to enter into a hauling contract with Nello L. Teer Company in order that you may be able to meet your payrolls maturing before receiving payment from the Nello L. Teer Company.

"Our committee has discussed your request and we have decided to furnish you funds on the funds to meet your payroll and other expenses in the sum not to exceed $25,-000.00 or an amount consistent to the conditions that may exist at the time of your request based on the security of the Nello L. Teer Compa-

ny acceptance and your own financial standing during the time of such advances. No doubt you will furnish us statements of your financial status from time to time that we may request and other information that we may want."

Furrow began to haul stone under his sub-contract, and from time to time rendered invoices to Teer for work done. These invoices were assigned to the Bank. Teer accepted the assignments of the invoices and agreed to pay them in accordance with its letter of February 17, 1954. Furrow delivered the assigned invoices, with Teer's acceptance and agreement, as collateral for notes which Furrow gave the Bank. The first invoice was so assigned and accepted on April 12, 1954, and was paid in due course by Teer, as were a number of other invoices for work done before May 30, 1954. The three invoices involved in this suit covered the periods May 30 to June 9, June 9 to June 17, and June 17 to July 1, 1954, respectively. The last invoice read as follows:

"Invoice of stone hauled from June 17th to July 1st 1954 for Nello L. Teer Co.

| | | |
|---|---|---|
| 65,478.1 ton | @ 26.5 | $17,351.70 |
| Less 5% retained | | 867.59 |
| | | 16,484.11 |
| Less Gas | | 4,884.67 |
| | | $11,599.44 |

"I hereby assign the above to The Raleigh County Bank, Beckley, W. Va., this 2nd day of July 1954.

"S. A. Furrow

"We hereby accept the above assignment and payment of the same will be made in accordance with our letter of Feb. 17, 1954.

"Nello L. Teer Co.
"By Robert E. Tidwell

"Above invoice assigned to Kanawha Valley Bank, Charleston, W. Va.

"The Raleigh County Bank
"By D. C. Wade
"V. P. & Cashier"

The two previous invoices were similar, except that neither of them contained any deduction for gas. They were in the amount of $19,270.49 and $11,529.00, respectively, after retainage; the wording of the assignment and of Teer's acceptance and agreement to pay was the same on each invoice; but the June 9 invoice was not reassigned to the Kanawha Valley Bank.

During several days in June, 1954, Furrow failed to meet the minimum requirement of 20,000 tons per day, and Teer, as authorized by its contract with Furrow, employed additional trucks, at a cost to Teer of $6,538.50. On July 12, Teer again hired additional trucks to bring the tonnage of stone up to the required amount.

On July 24, Teer received from the Turnpike Commission payment of its current estimates, which included the work covered by the three invoices involved in this suit. Teer did not pay the amount of these invoices to the Bank, as it had agreed to do. At that time certain checks which Furrow had given to materialmen had been dishonored and were outstanding. On July 26, Furrow stopped work under his sub-contract and Teer made other arrangements to have the work completed.

Plaintiff contends, and the district court found, that whatever may have been the obligations existing as between Teer, Furrow, Furrow's surety, and the Bank, prior to Teer's acceptance of the assignments and its agreements to pay, such acceptances and agreements created a direct and primary obligation from Teer to the Bank, not subject to any deductions except those provided for in Teer's letter of February 17. Teer contends that the Bank has no greater rights than an ordinary assignee would have, and that Teer has the right to set up against the Bank certain defenses which Teer would have against Furrow, the assignor. These include the cost to Teer of hiring additional trucks and equipment, including those hired in June and July, other costs incurred to complete the work covered by Furrow's sub-contract, and the payments which Teer has made and will be required to make to persons who furnished labor and materials to Furrow for which Furrow failed to pay. These costs and expenses exceed the sums due Furrow under the assigned invoices, received by Teer from the Turnpike Commission on July 24, and other sums earned by Furrow and held by Teer on July 26, when Furrow stopped work under his sub-contract.

In its answer setting up the foregoing defenses, Teer included a counterclaim for interpleader against Furrow and Aetna, Furrow's surety. Furrow and Aetna filed answers to the counterclaim for interpleader, asserting claims against the funds, and Aetna filed cross-claims against thirty-three additional persons, firms and corporations, who had asserted claims against Furrow, and asked that they be joined in each of the actions as third party defendants. Aetna's claims were based upon its rights of subrogation and an assignment which it had taken from Furrow, but neither the Bank nor Teer knew of that assignment when Teer accepted and agreed to pay the invoices assigned by Furrow to the Bank and when the Bank made the loans to Furrow on the security of those assignments, acceptances and agreements to pay.

Plaintiff's motions (1) to dismiss, as to the plaintiff, the counterclaims for interpleader, and (2) for summary judgment against Teer, are based upon the direct obligation assumed by Teer to the Bank, and do not affect the reciprocal rights and obligations of Teer, Furrow, Aetna and the persons who furnished labor and materials to Furrow.

The facts set out above in this opinion are established by the pleadings and by affidavits filed by the respective parties. No substantial issue of fact is presented, within the meaning of Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A.

We agree with the district court that it is immaterial whether the original correspondence between Teer, Furrow, and the Bank be considered a contract, an equitable assignment, or a mere plan of

financing to be followed in the future. This suit is based upon the direct obligations to the Bank which Teer assumed when it accepted the assignment of the several invoices and stated: " * * * payment of the same will be made in accordance with our letter of Feb 17, 1954". That letter fixed the time of payment to the Bank, "upon receipt of our estimates from the West Virginia Turnpike Commission", whatever the time of payment in the contract between Teer and Furrow may have been, and provided for the deduction only "of all moneys owed by S. A. Furrow to Nello L. Teer Company for petroleum products bought by us for Mr. Furrow's account". *Expressio unius est exclusio alterius.* Only one invoice contains a deduction for petroleum products, and the net amount, after the deduction, was assigned. Teer claims no other deduction for petroleum products.

Judge Moore stated in his opinion [128 F.Supp. 330]:

> "We have here not a mere acknowledgement by Teer that it has received notice of the respective assignments, but an outright agreement, in unmistakable terms, that it will pay the amounts of the invoices to the Bank.

> "Ample consideration for Teer's agreement to pay the assigned invoices existed, not only in the benefit which flowed to Teer through the financing of Furrow, his sub-contractor, by the Bank, but also in the risk assumed by the Bank in accepting the assignments as collateral and extending credit to Furrow."

Teer's acceptance of the assignments, coupled with his agreements to pay the amount of the invoices to the Bank, created a new and direct legal right in the Bank against Teer, and prevent Teer from setting up in this case defenses which might be available to it against Furrow. Williston on Contracts, Rev. Ed., Vol. 2, sec. 426, p. 1228; Restatement of the Law, Contracts, secs. 424–425; Michie's Jurisprudence, Vol. 2, Assignment, sec. 28; Batavian Bank v. Minneapolis, St. P. & S. S. M. R. Co., 123 Wis. 389, 101 N.W. 687; Isaac Eberly Co. v. Gibson, 107 Va. 315, 58 S.E. 591; School Board of Carroll County v. First Nat. Bank, 161 Va. 127, 170 S.E. 625. See also Bentley v. Standard Fire Ins. Co., 40 W.Va. 729, 23 S.E. 584.

The judgment order should be and it is

Affirmed.