James **HARDISON** and Rachel Hardison,
Appellants,

v.

**SHIRLINGTON TRUST COMPANY,** a
Banking Corporation of the State of
Virginia, Appellee.

No. 2211.

Municipal Court of Appeals for the
District of Columbia.

Submitted Aug. 4, 1958.

Decided Jan. 26, 1959.

James Shenos, Washington, D. C., for
appellants.

Jackson Broadsky, Washington, D. C., for
appellee.

Before ROVER, Chief Judge, HOOD,
Associate Judge, and CAYTON (Chief
Judge, Retired) sitting by designation un-
der Code, § 11–776(b).

ROVER, Chief Judge.

On April 3, 1957 appellants purchased
a new automobile from Cherner Motor
Company; a trade-in allowance was made
for an old car and the balance of the pur-
chase price was represented by a promis-
sory note for $3,154.88, including finance
charges, secured by a conditional sales con-
tract. Immediately after the transaction

was consummated, Cherner assigned the note and contract to Shirlington Trust Company. Payments in the amount of $282.08 were made by appellants to Shirlington prior to July 25, 1957 when the automobile was totally demolished in an accident. A salvage credit of $500.00 was allowed appellants and this suit was instituted by Shirlington for the balance allegedly due on the note of $2,372.80.

Appellants admitted execution and delivery of the note in their answer, and filed a counterclaim alleging that Shirlington had orally represented to them that it had insured the car, when in fact it had not. They assert that on the faith of these representations they did not obtain insurance and as a result have suffered a substantial loss.

The circumstances, as set forth in the statement of proceedings and evidence, which give rise to appellants' counterclaim are these: At the time of the sale, Cherner Motor Company transferred an existing policy of collision insurance from the old car to the new one. Two weeks later, on April 15, the insurance company cancelled this policy (effective April 26, 1957) by mailing a notice of cancellation to appellants. A copy of the letter was also mailed to Shirlington. Upon receipt of this notice, Mr. Hardison telephoned Shirlington to inquire about the insurance and was told by its representative that "there was nothing to worry about—the car was insured."

On May 21, appellants received a letter from Shirlington requesting the policy number of their insurance. Mr. Hardison again called Shirlington and was told that "everything was all right, the car was covered by insurance." A third phone call was made to Shirlington in reference to insurance, June 19. Appellants were again assured that "the car was insured—furthermore it had to be insured for their own [Shirlington's] protection." Appellants did not purchase insurance or pay any premiums and were never billed for any by Shirlington. The car was demolished in an accident a few days later.

After all evidence was in, the court directed the jury to return verdicts in favor of Shirlington on both the complaint and the counterclaim.

■ Considering first the action brought on the note, we think the court was correct in its ruling. The only defense raised by appellants in their answer was a denial that money was owed because they believed the automobile was fully insured. Shirlington's failure to obtain insurance would not be a defense to the suit brought on the note and inasmuch as no factual issues are in dispute on this claim, the order granting the directed verdict was correct.

■ Turning to the counterclaim, Shirlington's obligation to obtain insurance cannot be made to rest on an express contract. The terms of the conditional sales contract obligated the purchaser to maintain fire and theft insurance on the property and any other insurance the seller might require. The agreement further authorized the seller or the seller's assignee to purchase any and all insurance out of the down payment. At the time of the sale, the seller did not require any additional insurance; it merely accepted and transferred the policy previously purchased by appellants to the new car. The conditional sales contract imposed no affirmative duty to insure on Shirlington as assignee. At its election it could maintain or increase the insurance, or permit the vehicle to be operated uninsured if it so desired. Any undertaking to obtain insurance would have been voluntary and of course beneficial to Shirlington.

■ If there were any obligation on the part of appellee to insure, it arises, as appellants allege in their counterclaim, as a result of Shirlington's oral representations that the property was insured. Under the familiar principle of equitable estoppel, a party is estopped to deny, or assert the contrary of, any material fact which, by his words or conduct, has induced another to act in such a manner as to change the lat-

ter's position prejudicially. See Goodman v. Dicker, 83 U.S.App.D.C. 353, 169 F.2d 684. " 'The essential elements of equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.' " [1]

■ Unless only one inference can be drawn from the evidence, the existence of an estoppel is a question to be determined by the jury. In the present case there were several conflicts in the evidence. Whether the remarks claimed to constitute an estoppel were made; whether there was an actual reliance by appellants on the statements of Shirlington's agents when several phone calls were made in reference to the insurance; and whether appellants possessed knowledge that insurance had not been obtained inasmuch as they were not billed for it and did not receive a policy represent areas of conflict in the evidence. We are therefore of the view that a directed verdict was improper on the counterclaim and that a new trial should be granted on this phase of the case.

■ One other point is worthy of mention. In their counterclaim, appellants sought as damages a sum equal to the balance due on the promissory note plus the amount given them as a trade-in allowance. Should appellants be successful in a new trial, the proper measure of damages would be the proceeds appellants would have received had insurance been procured.

Judgment on complaint affirmed.

Judgment on counterclaim reversed with instructions to grant a new trial.

---

1. Parker v. Sager, 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661, quoting 19 Am.Jur., Estoppel, § 42.