**GENERAL ELECTRIC CREDIT CORPORA-TION, a corporation, Appellant,**

**v.**

**SECURITY BANK OF WASHINGTON, D. C., a corporation, Appellee.**

**No. 4051.**

District of Columbia Court of Appeals.

Argued Oct. 16, 1967.

Decided Aug. 8, 1968.

Milton Becket, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Walter J. Murphy, Jr., Washington, D. C., was on the brief, for appellant.

Leonard C. Collins, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

In October 1961, appellant General Electric Credit Corporation and Le-Wood Homes, Inc., a builder of shell homes, entered into an agreement under which Le-Wood would sell to Credit Corporation installment notes secured by mortgages or other written instruments on real property. These notes represented commitments by various buyers to pay the purchase price of houses built by Le-Wood. In the years that followed, Le-Wood regularly contracted to sell houses to various individuals and accepted secured installment notes for the sales price. After the houses were built by Le-Wood, the notes were sold to Credit Corporation. The agreement provided that if any buyer failed to pay two installments on his note, Le-Wood was required to repurchase the overdue note for cash upon demand by Credit Corporation. In the event Le-Wood failed to repurchase any note or carry out any of its other obligations under the agreement, Credit Corporation was authorized to hold, as security for performance of those obligations, any property of Le-Wood in its possession. During the course of their dealings, it was not unusual for Credit Corporation to make demands upon Le-Wood to buy back overdue notes.

In 1963 Le-Wood contracted to build a house for one Peyton Bailey and Credit Corporation promised to pay Le-Wood $8,200 for Bailey's note in the face amount of $14,603. Le-Wood at this time needed interim financing to complete construction and approached appellee Security Bank of Washington, D. C. with an offer to assign the right to receive the payment of $8,200

as security for a loan by the bank of money needed to finish building the house.

On December 3, 1963, Credit Corporation wrote the bank that Le-Wood had requested that the proceeds of certain approved contracts be sent directly to the bank and stated that upon receipt of all documentation and evidence of completion its drafts would be made payable to Le-Wood and the bank. The letter listed seven contracts, one being that of P. Bailey in the sum of $8,200. There was at this time no commitment by the bank to Le-Wood. The bank later agreed to make the loan to Le-Wood only on condition of an acknowledged and accepted assignment by Credit Corporation.

On December 16, 1963, the bank telephoned Credit Corporation to discuss the proposed assignment and the testimony as to what transpired during that conversation is conflicting. A vice president of the bank testified that before extending the loan to Le-Wood he had telephoned Credit Corporation "to find out that everything was all right" with the proposed assignment and was told "it was okay". The witness insisted that in making the loan he "was not relying on Le-Wood's credit or on Peyton Bailey's credit" but rather upon the assignment and Credit Corporation's oral assurances on the telephone.[1] He further stated that he did not know, nor did he try to find out, the terms of any agreement between Le-Wood and Credit Corporation.

On the other hand, a former officer of the Credit Corporation testified that when the bank's representative telephoned to discuss the assignment Credit Corporation took the position that it "saw no objection to executing the assignment at that particular time, providing Le-Wood Homes met all of their obligations to General Electric Credit Corporation." The bank representative allegedly replied at that time that

---

1. Even as late as April 17, 1964, after the note was past due, the bank was told by Credit Corporation that "things were still all right" and that "the assignment was still in effect".

"he had no fear of that because he had done previous business with these people and that he had no worries in that respect."

At the time of this telephone conversation $20,000 in repurchase requests had been issued and were outstanding. As an explanation for Credit Corporation's failure to inform the bank of this fact the witness stated that such requests were normal occurrences in its business and were no cause for particular concern as long as Le-Wood was a going business. Such requests had been issued to Le-Wood previously and had been honored, and Credit Corporation did not know that the requests would be of interest to the bank. The witness further testified that the fact that repurchase requests were outstanding did not mean that Le-Wood had defaulted on any of its obligations, although the agreement did require Le-Wood to make payment upon receipt of each demand for repurchase. Normally some period of time elapsed before payments were actually made and technically, Le-Wood was not in default at the time of the assignment. The witness stated he told the bank that as of that date everything was all right because in his opinion it was.

The same day, after the telephone conversation, the bank sent a letter to Credit Corporation enclosing copies of the assignment for its files. The letter referred to Credit Corporation's commitments to purchase certain listed accounts, including that of Peyton Bailey in the sum of $8,200, and requested that Credit Corporation "signify your acceptance of the assignment by signing and returning the enclosed copy." A copy of the letter was returned to the bank endorsed by Credit Corporation as "Received and accepted this 20th day of December 1963."

In the assignment by Le-Wood to the bank of the account of Peyton Bailey in the sum of $8,200 Le-Wood represented that the account "correctly sets forth an undisputed account and contract" and that upon completion Le-Wood was entitled to "the full amount of the designated account from General Electric Credit Corporation." It was further represented that Credit Corporation "has full knowledge of this assignment and has consented thereto, and that General Electric Credit Corporation has agreed to disburse any and all funds due Le-Wood Homes, Inc. in payment of said account" directly to the bank "at the time said funds are due and payable" to Le-Wood.

Le-Wood subsequently went out of business and was no longer able to meet its obligations to repurchase overdue notes. Credit Corporation gained possession of the Bailey note but refused to pay the bank the amount of its assignment, arguing that under its agreement with Le-Wood it had the right to hold the $8,200 as security for the performance of Le-Wood's obligations to Credit.[2]

At the conclusion of all the evidence the trial judge ruled that if the jury found Le-Wood was in default on the outstanding repurchase requests on which Credit Corporation bases its claimed set-off at the time the bank and Credit Corporation discussed the assignment over the telephone, Credit Corporation had the duty to inform the bank that such repurchase requests were in default and, having failed to do so, Credit Corporation was estopped from subsequently claiming a set-off based on repurchase requests that antedated the assignment. Alternatively he ruled that if the jury found that the repurchase requests were not issued and in default until after the date of the assignment, Credit Corporation's claim was acquired subsequent to

2. Payments received on the Bailey note were put in a general loss reserve fund maintained as a contingency against loss under the agreement with Le-Wood. At the time Credit Corporation refused payment to the bank, the reserve fund had a balance of $100,000 and there were outstanding repurchase requests in the sum of $60,000.

the assignment and could not be set off against the assignee bank. The trial judge concluded that no matter how the jury determined this question of fact, Credit Corporation could not prevail on its claimed set-off as a matter of law and directed a verdict in favor of the bank. On appeal, Credit Corporation contests both of these rulings.

■■■ We are cognizant of the general rule that an assignee of a chose in action takes it subject to all defenses, including any valid set-off based on facts existing at the time of the assignment, Hudson Supply & Equipment Co. v. Home Factors Corp., D.C.App., 210 A.2d 837, 838 (1965); Restatement of Contracts § 167(1) (1932), but not to set-offs acquired after notice thereof to the obligor. Glassman Construction Co. v. Fidelity and Casualty Co. of New York, 123 U.S.App.D.C. 1, 3 n. 3, 356 F.2d 340, 342 n. 3, cert. denied, 384 U.S. 987, 86 S.Ct. 1890, 16 L.Ed.2d 1005 (1966). We are also aware that the adequacy of the defense of equitable estoppel to a claimed set-off is almost always a question of fact for the jury. Hardison v. Shirlington Trust Co., D.C.Mun.App., 148 A.2d 88, 90 (1959). These principles are not controlling here, however, for in our view Credit Corporation was estopped to claim a set-off against the bank by its own unqualified commitment to pay the assigned debt.[3] We therefore attach little significance to the disputed telephone conversation, discussed at length in the dissent.

■■ Acknowledgment and acceptance of an assignment by the debtor is not necessary to establish its validity, and the acceptance may be in such form as to create a direct primary obligation to pay. Batavi-

an Bank v. Minneapolis, St. P. & S. S. M. Ry., 123 Wis. 389, 101 N.W. 687 (1904).[4] As was said in Kanawha Valley Bank v. Nello L. Teer Co., 128 F.Supp. 325, 330 (S.D.W.Va.), aff'd, 227 F.2d 306 (4th Cir. 1955),

> No one, I think, would dispute the proposition that a debtor may freely contract with his creditor's assignee with reference to the assigned debt. If by the contract the debtor agrees unconditionally to pay the debt to the assignee, the assignee no longer stands in the shoes of the assignor, and is not chargeable with offsets which would have been available to the debtor in the absence of such a contract.

Similarly, in Security State Bank of Great Bend v. Midwest Foundry, Inc., 177 Kan. 151, 153, 277 P.2d 629, 630–631, 51 A.L.R. 2d 882, 885 (1954), the court explained that

> The plaintiff concedes that a set-off cannot be defeated by mere assignment. It argues, however, that there is an added element in this case, that is, the so-called acceptance of this assignment by defendant. It argues such acceptance brings this case under the rule announced in 47 Am.Jur. p. 723, § 19, that:
>
> 'Where a debtor by his conduct induces an assignee of a claim against him to believe that the obligation will be met, and that there is no defense thereto, he will be held to have waived the right to avail himself of a setoff against the assignor in an action by the assignee.'
>
> Plaintiff concedes the defendant as a debtor was under no obligation to seek out the assignee and advise him of an offset or counterclaim, but argues that

3. An appellate court may affirm for reasons other than those given by the trial court. Paton v. District of Columbia, D.C.Mun.App., 180 A.2d 844 (1962).

4. State Investment Co. v. Cimarron Insurance Co., 183 Kan. 190, 326 P.2d 299 (1958); Merchants' & Manufacturers'

Bank v. Terrace Realty Co., 171 Wis. 109, 177 N.W. 329 (1920). See also School Board of Carroll County v. First Nat'l Bank of Wytheville, 161 Va. 127, 170 S.E. 625 (1933); Isaac Eberly & Co. v. Gibson, 107 Va. 315, 58 S.E. 591 (1907).

this acceptance was an affirmative act, acknowledging the debt.

This argument is good. When defendant accepted this assignment it had the effect of advising the assignee bank that defendant owed the assignor the debt assigned and would pay it when due.

All of the evidence in this case points up the fact that in making the loan to Le-Wood the bank placed sole reliance on Credit Corporation's assurances that the loan would be repaid. It was for this reason that prior to making the loan, but subsequent to the letter of December 3, in which there was no qualification with respect to any of the listed contracts, the bank placed a telephone call to Credit Corporation to see that everything was all right. That same day the bank wrote the letter in which it enclosed copies of the assignment with the request that it be acknowledged and accepted by Credit Corporation. Whether or not Credit Corporation had a duty to inform the bank of the underlying agreement it had with Le-Wood or, at the very least, of the outstanding repurchase requests, which we think it clearly had, the fact is that the accepted assignment represented that the Peyton Bailey account correctly set forth an *undisputed* account, and that upon completion Le-Wood *was entitled to receive the full amount* of the designated account from Credit Corporation. It is true that the assignment contains no specific waiver of defenses, yet in the face of the unequivocal representations made it can hardly be said that Credit Corporation's agreement to "disburse any and all funds due" Le-Wood was a qualification upon the promise to pay which allows it a set-off against the bank's claim.

For the reasons given we are of the opinion that the bank is entitled to the funds due under the Bailey assignment and hold that the trial judge properly directed a verdict for the bank against Credit Corporation.

Affirmed.

MYERS, Associate Judge (dissenting) :

I respectfully dissent from the majority opinion, which is based upon a holding that Credit Corporation's signature at the bottom of a proffered one-line acceptance form bars Credit Corporation from asserting a cause of action which it could otherwise assert against the bank. While under certain circumstances acceptance of an assignment may bar a debtor from asserting against an assignee claims which he has against an assignor, I do not believe those circumstances exist in the present case.

The cases quoted in the majority opinion employ two different theories to reach the conclusion that acceptance of an assignment will bar a debtor's claim against an assignee. Although I am not sure which theory the majority has applied to the case at bar, I believe the present case does not contain a factual basis for the application of either.

In Kanawha Valley Bank v. Nello L. Teer Co., 128 F.Supp. 325 (S.D.W.Va. 1955), aff'd, 227 F.2d 306 (4th Cir.1955), the assignee did not loan any money to the assignor until after the debtor had accepted the assignment. Both the District Court and the United States Court of Appeals found all the elements of a separate contract between the debtor and the assignee, including "ample consideration" flowing between the parties.

The majority decision cannot rest on a finding that a separate contract existed between Credit Corporation and the bank.[1] The record does not reveal the exact date on which the bank made the loan to Le-Wood. It may well be that the loan was made before the written acceptance was received. If so, it would be difficult to argue that Credit Corporation signed the

---

1. The bank never attempted to put forth this theory.

acceptance as consideration for the bank's making a loan to Le-Wood. On the record before us there is no showing of any consideration received by Credit Corporation for signing the acceptance. Therefore, I am of the opinion that it is impossible to show the existence of a separate contract between Credit Corporation and the bank.

Neither do I think that an estoppel theory can be used to make the written acceptance in the case before us a bar to Credit Corporation's assertion of a setoff. In Security State Bank of Great Bend v. Midwest Foundry, Inc., 177 Kan. 151, 277 P.2d 629 (1954), which the majority quotes at length, the Kansas supreme court relied on the rule stated in 47 Am.Jur. Setoff and Counterclaim § 19:

> Where a debtor by his conduct induces an assignee of a claim against him to believe that the obligation will be met, and that there is no defense thereto, he will be held to have waived the right to avail himself of a setoff against the assignor in an action by the assignee.

The court then held that the debtor's acceptance of the assignment did induce such a belief in the assignee. The limitation upon the rule used in that case is contained in the same paragraph of American Jurisprudence where the holding in another case is described:

> [A] promise without consideration by the maker of a note to an assignee thereof after maturity after the assignment, to pay the demand which had in no way been made the basis of action or an occasion of prejudice to the assignee, does

not estop or preclude the maker from setting up an equitable setoff against the assignee which existed against the assignor at the time of the assignment.

In other words, the acceptance of an assignment or the promise to pay an assignee must induce a belief in the assignee which in some way is "the basis of an action or an occasion of prejudice." The assignee must in some way rely upon the acceptance or the promise to pay. The rule is not that a naked promise to pay will always be enforced, but that a statement or promise, upon which an assignee reasonably relies to his detriment, will be enforced.

The record here is clear that the bank did not claim reliance upon the formal written acceptance of the assignment, but claimed that it made the loan in reliance upon oral representations which an officer of Credit Corporation made in a telephone conversation. Both litigants and the trial judge understood the bank's claim to be that Credit Corporation was estopped from asserting its counterclaim because of the representations which its officer made in the telephone conversation with the bank officer.[2] Nevertheless, the majority opinion states that the telephone conversation is of little significance and that "in making the loan * * * the bank placed sole reliance on Credit Corporation's assurances that the loan would be repaid." Since, in the majority's view, the telephone conversation is irrelevant, those assurances must be contained in the written acceptance of the assignment. The majority asserts that the bank relied upon the formal acceptance notwithstanding that the bank itself says it relied upon the telephone conversation. In

2. On direct examination by his own counsel, the bank's witness was asked:
  Q And did you make that [loan] in reliance upon the assignment and the oral assurance you were given on the telephone?
  A Yes; we did.
After the bank concluded its case in chief, Credit Corporation moved for a directed verdict. In ruling upon that motion, the trial judge summarized the bank's allegations:

It seems to me that what they have said is that they have been assured in a telephone conversation that the Bailey account is in good order and there has not been any withdrawal of the purchase arrangement or the credit stature of Bailey, and that the assignment will be paid by General Electric Credit Corporation, and that based upon the reliance of that assurance over the telephone, they lent the money.

saying that the bank relied upon the formal acceptance, the majority is not substituting a theory of law for the theory the trial judge used in directing a verdict in favor of the bank. It is substituting facts not in the record for facts actually in evidence.

The trial judge directed a verdict on the basis that the oral statements made in the December 16 telephone conversation estopped Credit Corporation from asserting a counterclaim based on repurchase requests issued before that date and that any other claim was based on facts not in existence at the time of the assignment. This ruling was erroneous.

It is recognized in this jurisdiction that, as related to the party estopped, the essential elements of equitable estoppel are:

(1) conduct which amounts to a false representation or concealment of material facts, or, at least, conduct which is calculated to convey the impression that the facts are otherwise than, or inconsistent with, those which the party subsequently attempts to assert;

(2) intention, or, at least, expectation that such conduct shall be acted upon by the other party; and

(3) knowledge, actual or constructive, of the real facts. As to the party claiming estoppel, the elements are:

(1) lack of knowledge and the means of knowledge of the truth as to the facts in question;

(2) reliance upon the conduct of the party estopped; and

(3) action based thereon of such character as to change his position prejudicially. Parker v. Sager, 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661 (1959), citing 19 Am.Jur. Estoppel § 42.

If the jury believed Credit Corporation's testimony, it could have found, *first*, that Credit Corporation had made the bank aware that Le-Wood owed Credit Corpora-

tion other obligations and had advised the bank that there was no objection to the assignment of the Bailey note provided Le-Wood honored its other obligations, and, under these circumstances, any further inquiry on the subject should have been made by the bank; *second*, that issuance of repurchase requests before the assignment was not material; *third*, that Credit Corporation, believing it not to be material, did not intend the bank to base any decision on whether requests had been issued; and, *fourth*, that the bank had, in fact, relied upon Le-Wood's business reputation and not on Credit Corporation's representations in this matter, as evidenced by the bank's alleged affirmance of confidence in Le-Wood only.

"Unless only one inference can be drawn from the evidence, the existence of estoppel is a question to be determined [by the trier of fact]." United Securities Corp. v. Verene, D.C.App., 193 A.2d 429, 431 (1963); Hardison v. Shirlington Trust Co., D.C.Mun.App., 148 A.2d 88, 90 (1959).

It was for the jury in the present case to decide what was said in the critical telephone conversation between representatives of the bank and Credit Corporation and to draw reasonable inferences from the statements made. By directing a verdict when factual issues remained unresolved, the trial judge erroneously assumed the role of trier of fact.

At trial, Credit Corporation did not base its claim to a setoff entirely upon the repurchase requests outstanding on the date of the assignment. It also argued that a setoff should be allowed for claims arising out of repurchase requests issued subsequent to the assignment. The trial judge ruled that if Credit Corporation based its claim on Le-Wood's failure to repurchase notes other than the Peyton Bailey note and the requests for repurchase were issued subsequent to the assignment, Credit Corporation's claim could not be asserted against the assignee bank. In this jurisdiction, a claim asserted as a setoff against

an assignee must be based upon facts exist-ing at the time of the assignment. The general rule, as stated in the Restatement of Contracts § 167(1) (1932), is that

> [a]n assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and *to all set-offs and counterclaims of the obligor* which would have been available against the obligee had there been no assignment, *provided that such defenses and set-offs are based on facts existing at the time of the assignment.* [Emphasis supplied.]

But as long as the claim urged as a setoff has matured by the time it is asserted, the law does not require that the claim be mature on the date of the assignment. Williston on Contracts § 447; Corbin on Contracts § 896; Restatement of Contracts § 167.

When Credit Corporation purchased the Peyton Bailey note from Le-Wood, it acquired the right to use the purchase price of that note to secure performance by Le-Wood on all the notes it had previously bought from Le-Wood. The potentiality of a default on any of these previous notes was an existing fact at the time of the assignment. Maryland Cooperative Milk Producers v. Bell, 206 Md. 168, 177, 110 A.2d 661, 665 (1955), and the bank's rights were subject to claims arising out of that fact. Obviously Credit Corporation may assert its claim of setoff arising out of notes purchased prior to the assignment, but it is precluded from asserting as setoff claims arising out of notes purchased after the assignment date. Claims arising out of the later notes are based upon facts not in existence at the time of the assignment. Glassman Construction Co. v. Fidelity & Cas. Co., 123 U.S.App.D.C. 1, 356 F.2d 340 (1966).

I would therefore reverse the trial court's ruling and remand this case for a new trial not inconsistent with this opinion.