INSURANCE, INC., Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY,
Appellee.

No. 18743.

United States Court of Appeals
Ninth Circuit.

Oct. 15, 1963.

Connolly & Walton and Peter B. Walton, Anchorage, Alaska, for appellant.

Harold J. Butcher, Anchorage, Alaska, for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

The central issue on this appeal is whether the District Court erred as a matter of law in determining that an assignment made by one Maynard R. Smith (hereafter Smith), to appellee United States Fidelity and Guaranty Company (hereafter U.S.F. & G.), entitled it to a fund on deposit in the registry of the District Court representing the fruits of a judgment obtained by Smith against Travelers Indemnity Company

(hereafter Travelers), or whether the District Court erred as a matter of law in determining that appellant, Insurance, Inc., is not entitled to said fund under an assignment made to it by Smith.

Appellant concedes that the facts of the case are settled by the findings of fact made by the District Court and makes no attack on such findings.

From such findings of fact we learn:

1) That under date of December 23, 1954, Smith as a prime contractor entered into a construction contract with the United States of America for the construction, at Kenai, Alaska, of family quarters, dispatch office and outside utilities to serve the same. We will hereafter refer to this construction project as the "Wildwood" project;

2) That on December 24, 1954, Smith submitted a written application to U.S.F. & G. for a payment and performance bond under the provisions of 40 U.S.C. § 270, to enable him to meet the requirements of the contract with the United States, and U.S.F. & G. issued its payment and performance bond to guarantee payment and performance under Smith's contract with the United States;

3) The bond application submitted by Smith to, and accepted by, U.S.F. & G. contained, among others, the following provisions under which it was agreed:

"*Second*, to indemnify the Company against all loss, damages, claims, suits, costs and expenses whatever, including court costs and counsel fees at law or in equity, or liability therefor, which the Company may sustain or incur by reason of: executing or procuring said bond, or making any investigation on account of same, or procuring its release or evidence thereof from same, or defending, prosecuting or settling any claim, suit or other proceeding which may be brought or threatened by or against any of the undersigned or the Company in connection with same or any collateral security hereunder or any of the agreements herein contained, and to place the Com-

pany in funds before it shall be required to make any payment;

"*Third*, to assign and convey and does hereby assign and convey to the Company as collateral to secure the obligations herein and any other indebtedness or liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, all the right, title and interest of the undersigned in and to: (a) said contract and any change, addition, substitution or new contract (including all retained percentages, deferred payments, earned moneys and all moneys and properties that may be due or become due under said contract, change, addition, substitution or new contract), and every sub-contract let or that may be let in connection therewith and every bond securing the same, and every claim which the undersigned may have or acquire against any person furnishing or agreeing to furnish labor, material, supplies, machinery, tools or equipment in connection with said contract or any sub-contract; and (b) all machinery, equipment, plant, tools, supplies and materials which are now or may hereafter be about or upon the site of said work, including supplies and materials now or hereafter purchased for or chargeable to said contract which may be in process of construction, or in storage elsewhere, or in transportation to said site; such assignment to be effective as of the date of the construction contract but only in event of (1) any breach of any of the agreements herein contained or of said contract or performance bond or of any other bond executed or procured by the company on behalf of the applicant herein, or * * *.";

4) That on December 23, 1954, Smith entered into a subcontract with Oneco, Inc., to perform the excavation and fill work involved in the Wildwood project;

5) That one of the conditions required of the subcontractor, Oneco, Inc., was

that it provide a performance and payment bond to guarantee performance of the work agreed to be performed by Oneco, Inc.;

6) That Travelers Indemnity Company, at the request of Oneco, Inc., furnished its performance and payment bond and that said bond, among other things, obligated Travelers to insure performance of the work described in the subcontract;

7) That commencing in the month of January, 1956, and on several other occasions in the spring and summer months of 1956, Smith got into financial difficulties and was unable to pay his suppliers for equipment and materials furnished and was unable to pay subcontractors for work performed by said subcontractors, and advised U.S.F. & G. of his inability to make payment as provided in the contracts for materials and supplies and for work performed by subcontractors, and that material suppliers and subcontractors made demand upon U.S.F. & G. under the provisions of its bond, to make said payments and that U.S.F. & G. did make said payments to suppliers and subcontractors in the amount of $75,-000.00;

8) That on or about May 8, 1956, Oneco, Inc., having performed a portion of the work for which it had contracted, and for which Travelers bond was furnished, defaulted, leaving unfinished a portion of the work described in the subcontract;

9) That on or about the 8th day of May, 1956, Smith notified Travelers of the default of Oneco, Inc.;

10) That Travelers offered to pay Smith his reasonable costs if he would undertake to finish the work which Oneco had left undone;

11) That Smith completed said work in accordance with the plans and specifications of the subcontract, and billed Travelers for the cost to Smith of such work in the amount of $14,438.41;

12) That on the 1st day of September, 1956, Smith executed a written assignment to appellant, Insurance, Inc., which among other things provided:

"the undersigned, Maynard R. Smith, hereby assigns to Insurance, Inc., an Alaska corporation, the sum of Fourteen Thousand Four Hundred Thirty-eight and 41/100 Dollars ($14,438.41) due to the said Maynard R. Smith from The Travelers Indemnity Company, a Connecticut corporation.

"This assignment is made in consideration of insurance premiums due and to become due from the assignor to the assignee, Insurance, Inc.";

13) That at the time of said assignment, appellant, Insurance, Inc., had knowledge of the previous assignment to U.S.F. & G. and at the time of said assignment to Insurance, Inc., Smith had previously defaulted under his prime contract with the United States;

14) That Travelers refused to pay said demand, and Smith instituted suit therefor against Travelers. Smith recovered judgment against Travelers in the amount of $11,027.25, together with costs and attorneys fees, which amount Travelers paid into the registry of the court.

The parties to this appeal were permitted by the District Court to intervene in the suit pending between Smith and Travelers. In the District Court each party claimed to be entitled to the fund deposited under their respective assignments.

As conclusions of law with respect to the parties to this appeal, the District Court concluded:

"That the assignment to Insurance, Inc. made by Maynard R. Smith on September 1, 1956 is subordinate to the assignment made by Maynard R. Smith to the United States Fidelity and Guaranty Company on December 24, 1954 and that the United States Fidelity and Guaranty Company is entitled upon its claim in intervention to the proceeds

of the judgment herein entered in favor of Maynard R. Smith against the Travelers Indemnity Company."

From our review of the law and the facts in this case, it is clear to us that the judgment appealed from should be affirmed for the reasons and upon the authorities appearing in the memorandum opinion of the District Judge, relevant portions of which are as follows:

"The crux of the matter lies in an interpretation of the general indemnity agreement and assignment between Smith and his surety, the application of such to the claim against Travelers, and the priority which it establishes as against the subsequent assignee.

"When a surety, in discharging its obligation under a performance bond, completes a contract for a defaulting principal or sustains a loss upon its bond, it becomes subrogated to the rights of the principal under his contract, which rights become effective as to other assignees as of the date when the bond was executed, and have priority over a later assignment. Gray v. Travelers Indemnity Company, (C.A.9, 1960) 280 F.2d 549; Martin v. National Surety Co., (1937) 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; American Employers Ins. Co. v. School District, (1954) 99 N.H. 188, 107 A.2d 684.

"In this case the assignment covered all rights of Smith under his contract, 'or every subcontract let or that may be let in connection therewith and every bond securing the same.' The agreement between Smith and Travelers arose solely from Travelers' obligation to Smith to guarantee performance of the subcontract entered into between Smith and Oneco. Hence the right of action against Travelers arises out of the subcontract and bond, is covered by the assignment to U.S.F. & G., and has priority over the later assignment to Insurance, Inc.

"The contentions of Insurance, Inc., may be summarized as follows:

"(1) That the assignment to U.S. F. & G. covered only monies that would become due Smith from the United States Government. To adopt such contention would be to ignore the plain meaning of the assignment. An interpretation may not be adopted which would render the language above-quoted meaningless.

"(2) That the U.S.F. & G. could not have obtained an assignment by Smith of monies which later became due under Smith's contract with Travelers Indemnity, 'as such contract was not in existence at the time that the U.S.F. & G. assignment was executed,' citing 6 C.J.S. Assignments § 18, p. 1062. As we have observed, the right of U.S.F. & G. relates back to the date of its bond. See also Commercial Casualty Ins. Co. of Newark, N. J. v. Murphy, 282 Mass. 100, 184 N.E. 434; Danais v. M. De Matteo Const. Co., (D.C.N.H.) 102 F.Supp. 874; Wike v. Board of Trustees, 229 N.C. 370, 49 S.E.2d 740. Such right may be asserted as to the contractor's right to recover against Travelers even though the agreement between Smith and Travelers, arising out of the subcontract and bond, was subsequently made.

"(3) That the assignment to U.S. F. & G. is void under the rule that assignments of future wages or earnings are against public policy, citing 6 C.J.S. Assignments § 20, p. 1067; Orkow v. Orkow, 133 Cal.App. 50, 23 P.2d 781; Vilbig v. State, Tex. Civ.App., 318 S.W.2d 10; Stokely Bros. & Co. v. Conklin, 131 N.J.Eq. 552, 26 A.2d 147; and Restatement of the Law of Contracts, Sec. 154, p. 187. This rule, relating to wages or earnings to become due on an employment contract not yet executed, has no application here. It is well settled that executory rights under a contract are generally assignable.

6 C.J.S. Assignments § 19, p. 1062; 4 Am.Jur., Assignments, Sec. 4 & 5, p. 232, Sec. 26, p. 249; Restatement of the Law of Contracts, Sec. 155, p. 190; American Employers Ins. Co. v. School District, supra.

"(4) That even where future earnings are assigned, such an assignment is merely an equitable assignment and is subordinate to the rights of one claiming under a "legal assignment." We can find nothing in the authorities examined to suggest that an assignment for security purposes is not a 'legal assignment.' In fact the contrary appears. Gray v. Travelers Indemnity Company, supra."

The judgment appealed from is affirmed.