356 F.2d 340
 123 U.S.App.D.C. 1
 GLASSMAN CONSTRUCTION CO., Inc., Appellant,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellee.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,
v.
GLASSMAN CONSTRUCTION CO., Inc., Appellee.
 Nos. 18850, 18853.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 25, 1965.
Decided Jan. 6, 1966.
 
 Mr. Leonard S. Melrod, Washington, D.C., with whom Mr. Joseph v. Gartlan, Jr., Washington, D.C., was on the brief, for appellant in No. 18,850 and appellee in No. 18,853.
 Mr. Thomas H. McGrail, Washington, D.C. for appellee in No. 18,850 and appellant in No. 18,853.
 Before BURGER, WRIGHT and MCGOWAN, Circuit Judges.
 J. SKELLY WRIGHT, Circuit Judge:
 
 
 1
 Appellant Glassman Construction Company was the prime contractor on three contracts with the School Board of Fairfax County, Virginia, for construction of three schools in that county. It entered into subcontracts with one J. C. Harman for performance of the electrical work on each of the three jobs. Subsequently Harman entered into an agreement with appellee Fidelity & Casualty Company of New York, pursuant to which Fidelity executed payment bonds covering Harman's obligations to the suppliers of labor and materials on two of the above mentioned subcontracts. Harman in return assigned to Fidelity his rights to collect and receive all moneys due and to become due on these two subcontracts. Fidelity was not the surety on the third subcontract.
 
 
 2
 After Harman failed to pay some of the materialmen on the two jobs bonded by Fidelity, Fidelity paid them pursuant to its obligation under the bonds. Harman also defaulted on the third subcontract and Glassman completed the work, incurring costs substantially in excess of the contract price. It is agreed by the parties that the excess costs on this third job exceeded the retainages on the two subcontracts on which Fidelity was surety.
 
 
 3
 Fidelity filed a complaint in the District Court against Glassman claiming the retainages on the two subcontracts it bonded. Glassman defended on the ground that it was entitled to set off against these retainages the excess costs it incurred in completing Harman's work on the third job. On cross-motions for summary judgment, the District Court entered judgment for Fidelity in the amount of $5,571.69, but denied Fidelity's request for interest from December 7, 1961, the date on which the subcontracts became due and payable. Glassman limits its appeal to the issue of liability and Fidelity cross-appeals for interest. We affirm the District Court.
 
 
 4
 Fidelity's claim to the retainages on the subcontracts it bonded is based on three independent grounds. Primarily, it seeks to establish itself as an assignee of the rights of Harman. Glassman opposes recovery on this ground, citing United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), for the principle that an assignee's claim to a fund is subject to any right of set-off the stakeholder may have against the assignor. Fidelity, while admitting that Munsey Trust so holds, would limit Munsey Trust to its facts-- where the United States is the stakeholder with the set-off claim.
 
 
 5
 Fidelity's second approach to recovery, designed to avoid Glassman's set-off claim, is as assignee of the rights of the materialmen whose claims it satisfied. Its title to these rights, it argues, is clear on two bases. First, it obtained the materialmen's rights by formal assignment at the time it paid the materialmen's claims, and second, under the traditional theory of subrogation the 'surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.' Pearlman v. Reliance Insurance Co., 371 U.S. 132, 137, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962).
 
 
 6
 Fidelity's third ground for recovery, and second basis for avoiding the set-off claim, is predicated on Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896). In that case the Supreme Court recognized the surety as the subrogee of the party protected by the bond against the claims of materialmen. Thus here, since Glassman was an obligee on the bonds, Fidelity would succeed to Glassman's right to use the retainages to satisfy the claims of materialmen.
 
 
 7
 Although there is much support in Pearlman and Prairie State Nat. Bank for Fidelity's position, the fact remains that in neither was the stakeholder asserting the cross-claim. Moreover, the broad language[1] in Munsey Trust, where, as here, the stakeholder was asserting the cross-claim, would seem to cover the present case. Fortunately, we need not penetrate the confusion created by the apparent inconsistencies in Pearlman, Prairie State Nat. Bank and Munsey Trust. Here Glassman's right to setoff against Harman did not arise until after it received notice of the assignment of Harman's rights under the subcontracts to Fidelity. Thus the set-off is ineffective against the assignment.
 
 
 8
 The law in Virginia,[2] as it does generally,[3] clearly recognizes that an assignee 'takes the assignment subject to all defenses of the obligor against the assignor, or pledgor, existing before notice of assignment.' Hartford Fire Ins. Co. v. Mutual Savings & Loan Co., 193 Va. 269, 277, 68 S.E.2d 541, 546, 31 A.L.R.2d 1191 (1952). See also National Bank & Trust Company v. Castle, 196 Va. 686, 85 S.E.2d 228 (1955), and 16 MICHIE, JURISPRUDENCE OF VIRGINIA AND WEST VIRGINIA 13, p. 423 (1951). This aspect of the case turns, therefore, on whether Glassman's right to set-off under the third subcontract arose prior to notice to it of the assignment to Fidelity under the first two.
 
 
 9
 The facts here show that the Harman subcontracts bonded by Fidelity were entered into December 14, 1959, that Fidelity, as surety for Harman, executed the payment bonds covering the two subcontracts on the following day, December 15, 1959, that Glassman's third subcontract with Harman, not bonded by Fidelity, was entered into on July 19, 1960, and that the default on all three subcontracts occurred on November 30, 1960. These facts present for our resolution two questions: (a) when did the assignment become effective, and (b) when did Glassman receive notice thereof.
 
 
 10
 As to the time the assignment in surety contracts becomes effective, there seems to be a division of authority.[4] And the State of Virginia, whose law we apply,[5] provides no guidance.[6] We must predict, therefore, the position of the court of last resort in that state were the problem presented to it for resolution.[7] We find that Virginia would follow the better reasoned cases,[8] including our own,[9] in holding that the assignment in a payment and performance bond is effective from the date of its execution. While the right actually to receive the retainages is subject to a condition precedent, when that condition is met, an equitable right to the funds withheld arises 'from and relate(s) back to the date of the original contract of suretyship.' Morgenthau v. Fidelity & Deposit Co. of Maryland, supra Note 9, 68 App.D.C. at 166, 94 F.2d at 635. See 4 CORBIN, CONTRACTS 875.
 
 
 11
 The issuance of the bonds was notice to Glassman of the assignment of Harman's rights to Fidelity. Virginia law required the bonds,[10] Glassman's contracts with Harman required the bonds, Glassman received copies of the bonds at the time they were issued and indeed was an obligee thereon. Even without considering the general practice in the industry, it is clear from these facts that Glassman had notice of the assignment.[11] Moreover, subrogation as a matter of law resulted on the payment of the bonds, and relates back to the time of issuance; notice to Glassman, of course, is presumed therefrom.[12]
 
 
 12
 Although Glassman now contends it had no notice of the assignment, its primary argument in support of its set-off claim is that the assignment did not take effect until the default of Harman and, since Harman defaulted on all three subcontracts on the same day, its set-off was effective against the assignment. The case, relied on by Glassman, which supports the thesis that an assignment in these circumstances is not effective until default of the assignor is Guarantee Co. of North America v. Tandy & Allen Construction Co., 76 N.J.Super. 274, 184 A.2d 426 (1962). Tandy & Allen held that, although the assignment was effective on the date the surety bond was executed, it was conditioned upon a breach of contract by the subcontractor, and that, since the breach deprived the subcontractor of the right to the retainages on his contract, no right thereto passed by assignment to the surety on the bond.
 
 
 13
 With due respect, the reasoning of Tandy & allen will not bear analysis. It recognizes the assignment but denies the surety the benefit thereof by delaying its effectiveness until after the subcontractor has defaulted and forfeited his contract rights. Thus Tandy & allen 'permits the (prime contractor) to enjoy its security and at the same time deprive the surety of the security without which the (prime contractor's) security would never have existed. * * * In (Tandy & Allen), the decision empowered the (prime contractor) to compel the surety assignee to carry the risk of the assignor's nonperformance of other contracts as well as of his nonperformance of the contract for which the bond was executed.' 4 CORBIN, CONTRACTS 897 n. 29 (Supp. 1964).
 
 
 14
 Fidelity's demand for interest from December 7, 1961, the date on which the subcontracts became due and payable, was properly denied by the District Court. Under the appropriate statute, plaintiff's judgment 'shall include interest on the principal debt from the time when it was due and payable' if interest is required 'by contract or by law or usage.' 28 D.C.CODE 2707 (1961). Citing Kenny Construction Company v. District of Columbia, 105 U.S.App.D.C. 8, 262 F.2d 926 (1959), Fidelity claims law and usage entitle it to interst. In Kenny Construction Company interst was allowed, not on retainages, but on funds improperly withheld from the contractor. Thus Kenny provides no authority for the payment of interst on retainages. Since the contract between Glassman and Harman does not provide for interest on retainages, no basis is shown for allowing it.
 
 
 15
 Affirmed.
 
 
 
 [1]
 In Munsey Trust, the Court stated that the United States has the right, "which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." 332 U.S. at 239, 67 S.Ct. at 1602
 
 
 [2]
 The parties are agreed that the law of Virginia, where the contract was performed, applies
 
 
 [3]
 The general rule, as stated in the Restatement of Contracts, is that 'an assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor.' RESTATEMENT, CONTRACTS 167(1) (1932). Corbin states that 'in no jurisdiction is the counterclaim or set-off effective against the assignee if it was acquired by the obligor after notice of the assignment.' 4 CORBIN, CONTRACTS 897, pp. 600-601 (1951). See also UNIFORM COMMERCIAL CODE 9-318(1) (1962), and comment thereto
 
 
 [4]
 See cases cited in Judge Magruder's excellent opinion in Gray v. Travelers Indemnity Company, 9 Cir., 280 F.2d 549, 554 (1960)
 
 
 [5]
 In determining priority to proceeds of construction contracts, we apply the law of the place of performance for the reason that the same law governs other questions of performance. See RESTATEMENT, CONFLICT OF LAWS 354 (1934)
 
 
 [6]
 The decision in American Surety Co. v. Plank & Whitsett, 159 Va. 1, 165 S.E. 660 (1932), cited and relied on by Fidelity, while involving priority to proceeds on construction contracts, is based on fraud and thus furnishes an uncertain precedent
 
 
 [7]
 'In ascertaining what the state law is, the federal court must make use of all available data. Thus, in the absence of state decisions in point the court may look to the Restatement of the Law, to treatises and law review writing, and may, where appropriate, assume that the state will follow the majority rule.' 1 BARRON & HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE 8 (Wright ed. 1960, Supp. 1964). See also President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 125, 130 F.2d 810, 812 (1942), and Cardozo, Choosing and Declaring State Law: Deference to State Courts Versus Federal Responsibility, 55 NW.U.L.REV. 419, 423-427 (1960)
 
 
 [8]
 See Gray v. Travelers Indemmity Company, supra Note 4. See also Insurance, Inc. v. United States Fidelity and Guaranty Co., 9 Cir., 323 F.2d 513, 516 (1963), and Danais v. M. DeMatteo Const. Co., D.N.H., 102 F.Supp. 874, 877 (1952). See also 4 CORBIN, CONTRACTS 897
 
 
 [9]
 See Morgenthau v. Fidelity & Deposit Co. of Maryland, 68 App.D.C. 163, 166, 94 F.2d 632, 635 (1937); Moran v. Guardian Casualty Co., 64 App.D.C. 188, 189, 76 F.2d 438, 439 (1935); Philadelphia Nat. Bank v. McKinlay, 63 App.D.C. 296, 72 F.2d 89 (1934); National Surety Company v. Lane, 45 App.D.C. 176 (1916); Lyttle v. National Surety Co., 43 App.D.C. 136 (1915)
 
 
 [10]
 3 CODE OF VIRGINIA 11-23 (1964)
 
 
 [11]
 Relying on two letters from Fidelity formally asserting its rights under the bonds, Glassman, in its supplemental brief, argues that it had no notice of the assignment until after the default by Harman. For the reasons stated in text, this argument is untenable
 
 
 [12]
 See authorities cited supra Note 8