**McCRORY CORPORATION, a Corporation, Plaintiff,**

v.

**DURWOOD AMERICAN INC., a Corporation, and Westroads, Inc., a Corporation, Defendants.**

**DURWOOD AMERICAN INC., a Corporation, Third Party Plaintiff,**

v.

**A. BORCHMAN SONS CO., a Corporation, and Sol Lewis Engineering Co., a Corporation, Third Party Defendants.**

**SOL LEWIS ENGINEERING CO., a Corporation, Fourth Party Plaintiff,**

v.

**The GATES RUBBER COMPANY, a Corporation, Fourth Party Defendant.**

**Civ. No. 03684.**

United States District Court,
D. Nebraska.

June 1, 1972.

William E. Morrow, Jr., and Richard H. Hoch, Omaha, Neb., for plaintiff McCrory.

Thomas J. Walsh, Omaha, Neb., for defendant Durwood.

John K. Boyer, Omaha, Neb., for defendant Westroads.

Frederick B. Allan, Jr. and Larry R. Forman, Omaha, Neb., for third party defendant, A. Borchman Sons.

Robert L. Berry, Omaha, Neb., for third party defendant, Sol Lewis Eng. Co.

John R. Douglas, Omaha, Neb., for fourth party defendant, Gates Rubber Co.

## MEMORANDUM DECISION

DENNEY, District Judge.

This matter comes before the Court for trial without a jury. Evidence has been received and post-trial written arguments have been submitted. The Court will now render a decision.

Jurisdiction is in the Court pursuant to 28 U.S.C. § 1332. Subsequent to the filing of the complaint, the plaintiff was granted leave, in open court, to amend by interlineation to properly allege diversity. Plaintiff's amendment did not properly allege jurisdiction. However, the pleadings and proof at trial show proper diversity and plaintiff will be directed to again amend its complaint by interlineation to conform to the following form:

The plaintiff is a corporation duly organized and existing under the laws of the State of Delaware *having its principal place of business in the State of Delaware*. The defendant,

Durwood American, Inc., is a corporation organized under and existing by virtue of the laws of Missouri *having its principal place of business in the State of Missouri.* The defendant Westroads, Inc., is a corporation organized under and existing by virtue of the laws of the State of Nebraska *having its principal place of business in the State of Nebraska.*

(The italicized words are those which must be added to the language of plaintiff's complaint.)

 It is not mere formality that leads the Court to direct plaintiff to so amend its complaint, for the allegations which plaintiff is hereby required to include are jurisdictional and go to the power of this Court to adjudicate this matter at all. An allegation that a corporation's home office is located in a certain state is not sufficient to show its "principal place of business" for diversity purposes. Delome v. Union Barge Line Co., 444 F.2d 225 (5th Cir. 1971). And an allegation of the principal place of business of a corporation is a jurisdictional prerequisite. Guerrino v. Ohio Casualty Insurance Co., 423 F.2d 419 (3d Cir. 1970). Although the proof and pleadings in this action affirmatively show diversity, for the clarity of the record and for purposes of finality, the Court will require amendment of the complaint itself to so alleged. *See* National Farmers Union Property & Casualty Co. v. Fisher, 284 F.2d 421 (8th Cir. 1960).

This initially simple action became rather complex as layer after layer of the construction process was revealed under the authorization of Rule 14 of the Federal Rules of Civil Procedure. A recital of the various claims and cross-claims in this action, gleaned from the more than one hundred separate filings already before the Court, is necessary to understand the nature of this action.

Plaintiff's complaint [Filing #1], as amended, [Filing #4] names Durwood American, Inc. (Durwood hereafter) and Westroads, Inc. (Westroads hereafter) as defendants, claiming damages to plaintiff's leased premises and the equipment and merchandise contained therein caused by water escaping from the leased premises of defendant Durwood on the floor immediately above plaintiff's premises in the shopping center owned by defendant Westroads. Defendant Westroads filed a cross-claim against Durwood [Filing #3], claiming indemnity under the lease between these two parties. Durwood answered the complaint [Filing #8] and the cross-claim [Filing #10].

Subsequently, Durwood, with leave of Court [Filing #15], filed its third-party complaint against third-party defendants A. Borchman Sons Co. (Borchman hereafter) and Sol Lewis Engineering Co. (Sol Lewis hereafter), claiming indemnity. Borchman answered the third-party complaint and cross-claimed against Sol Lewis, claiming indemnity [Filing #27]. Sol Lewis answered the third-party complaint [Filing #28] and the cross-claim of Borchman [Filing #32]. Subsequently, Sol Lewis filed a "fourth party complaint" against fourth-party The Gates Rubber Company (Gates hereafter) claiming indemnity [Filing #33]. Gates answered the fourth-party complaint [Filing #40].

Both Sol Lewis and Borchman filed amended answers to the third-party complaint of Durwood [Filings #48 and #50, respectively]. Durwood, without leave of Court, filed replies thereto [Filings #51 and #52].

Next, Durwood, with leave of Court [Filing #65], filed an amended third-party complaint [Filing #67] which was answered by Sol Lewis [Filing #69] and Borchman [Filing #74]. Gates, with leave of Court [Filing #92], filed an amended answer [Filing #93] to the fourth-party complaint of Sol Lewis. Durwood then filed its amended reply [Filing #101], again without leave of Court. (See Rule 7(a) of the Federal Rules of Civil Procedure.)

This action involves slightly in excess of $14,000.00. It required three days of trial and the attendance of seven attorneys on any given one of those days. It is difficult to believe that this case could not have been resolved in a much less costly manner.

The following shall constitute the Court's findings of fact and conclusions of law.

The events giving rise to this action all occurred at the Westroads Shopping Center in Omaha, Nebraska. Defendant Westroads owns those premises and leases space to plaintiff McCrory and defendant Durwood. McCrory operates a retail variety store immediately below the premises leased to Durwood. Upon those premises, Durwood operates a movie theater complex of six separate showing units. Upon all dates relevant to this action, the parties were in those relationships to each other.

The lease between Durwood and Westroads provided for indemnity for losses and/or attorney fees expended in defending an action such as this.

In 1968, Durwood began preparing the "shell", or empty premises, for operation as a theater complex. By a contract dated May 31, 1968, Borchman agreed to function as the prime, or general, contractor in the construction of the six movie houses within the empty shell. The General Conditions of the Specifications, incorporated into the agreement between the parties by Article 1 of AIA Document A101 "Standard Form of Agreement Between Owner and Contractor", provide in Article 4.18, in relevant part as follows:

## 4.18 INDEMNIFICATION

4.18.1 The Contractor shall indemnify and hold harmless the Owner . . . from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to . . . injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.

By a sub-contract dated June 11, 1968, Sol Lewis agreed with Borchman to do the mechanical work. The sub-contractor doing this particular portion of the work is commonly known as the mechanical sub-contractor and, in reference to this situation, installed the heating and cooling system for the theater complex. The sub-contract contains, in Article X, a provision making the general conditions of the specifications applicable to the parties and their agreement in the sub-contract. As quoted above, Article 4.18 provides contractual indemnity for the owner as against the Contractor. Article X incorporates this condition into the sub-contract to provide indemnity for the contractor, Borchman, as against the sub-contractor, Sol Lewis.

In late 1969, Sol Lewis, installed piping to air handling units and for heating and cooling of each of the six theater houses in the complex. In order to avoid the transmission of vibration from the units into the plumbing system causing noise and disturbing the operation of the theaters, the system was designed to have "flexible connectors" between the air handling units and the plumbing. These connectors were to dampen or absorb the vibration. They also were required to transmit water for heating and cooling purposes at a temperature of up to approximately 210°F and a pressure of up to approximately 100 p. s. i.

In 1969, Sol Lewis contacted Gates in order to obtain these flexible connectors.

Gates was not given sufficient information as to the specifics of use of the connectors to know the combined dangers of hot water, pressure and vibration. Neither was Gates informed that the connectors would be permanently covered from visual inspection and that they were not going to be periodically replaced as a matter of course. All this information would have been necessary for Gates to have made an intelligent choice as to the type of hose to use in the connectors. Even then, the particular expertise of a mechanical contractor might have been necessary to fully understand the peculiar hazards to which the hose would be subjected.

After installation of the rubber connectors to the air handling units in each of the six theater houses of the complex, they were covered with insulation and hidden from view along with the rest of the plumbing system. Into mid-1970, Sol Lewis and Borchman continued with the wrap-up of the construction project.

On February 11, 1970, at approximately midnight, one of the rubber flexible connectors ruptured, sending water cascading onto the floor of one of the movie houses and down into the McCrory store. A substantial amount of merchandise was either totally destroyed or damaged to such a degree as to be worth only a fraction of its former value. McCrory was required to pay extra clean-up help and to hire repairmen to correct damage to the premises. The loss resulting to McCrory from this incident was $6,637.59.

Durwood called in Natkin Service Company, a mechanical service and maintenance company specializing in heating and cooling systems. The Natkin repairmen informed Durwood of the fact that this type of flexible connector should be replaced on all the units with a metal braid flexible connector. Durwood contacted Sol Lewis but got no satisfactory response as to what should be done. Then, with characteristic efficiency, the home office of Durwood sat on the replacement recommendation for one month until another rupture occurred on March 11, 1970. This time, the damages to McCrory amounted to $7,897.38.

The discrepancies between the amounts of damage found here and those shown in plaintiff's "Statement of Damages" [Filing #89] result from the following factors. First, the testimony of Mr. Robert D. Drumheller established that the $21.00 charge by O.K. Electric Company for inspection and repair of wiring was incurred because of the second incident. Second, the Court finds that the uncontroverted evidence is that at least $500.00 was spent by McCrory in wages to employees for clean-up duties related to the first incident. Finally, due to a mathematical error in computing the damages for the second incident in plaintiff's statement of damages, the total was $10.00 higher than it should have been.

■ The law of Nebraska applies in this diversity action, due to Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 [1938], and its progeny. Where Nebraska has not spoken, this Court must adopt what it considers the choice of the Nebraska Supreme Court would be if confronted with the issue. E. g., Glassman Construction Co. v. Fidelity & Casualty Co., 123 U.S. App.D.C. 1, 356 F.2d 340 (1966).

■ The Court finds that the use of rubber flexible connectors of the type installed was negligent under these circumstances. Durwood had a duty to inspect the connectors and was negligent in failing to do so to ascertain whether they were adequate to do the job, even though they remained uncovered after installation for a significant time until the insulation was installed. The Court finds that Durwood breached the common law duty of due care which "the owner of real property [owes] in his relationship to those who occupy adjoining

premises." Segal v. Bloom Brothers Co., 249 Minn. 367, 82 N.W.2d 359, 363 [1957]. The *Segal* case enunciated that principle in considering a cotenant relationship. The Court finds such to be the law in Nebraska, even while differing from the *Segal* result.

Therefore, for the damages incurred in the first incident, plaintiff McCrory is entitled to recover from Durwood the sum of $6,637.59. Pursuant to the contractual indemnity provision of the general conditions of the contract between Durwood and Borchman, Borchman will be held liable to indemnify Durwood in the amount of $6,637.59. Pursuant to the contractual indemnity provision incorporated into the sub-contract, Sol Lewis will be held liable to Borchman in the amount of $6,637.59. The claim of Sol Lewis against Gates for indemnity is without merit and will be denied. The Court finds that Gates was not adequately apprised of the intended use of the product and all the factors necessarily important to such a choice to warrant indemnity under any theory set forth.

As to the second incident of March 11, 1970, the failure of Durwood to replace the flexible connectors upon notice that they were defective was negligent. Durwood delayed, for an unreasonable time, the replacement of the negligently-used connectors. Durwood's failure was so extreme as to be a superseding intervening cause and to negate any previous negligence on the part of Sol Lewis as a proximate cause of the injury. Due to this negligence, directly and solely the fault of Durwood, no indemnity will be allowed, contractually or otherwise, to Durwood.

Durwood will be liable to McCrory in the amount of $7,897.38 for the second incident.

An Order for Judgment will be entered contemporaneously with this Memorandum Decision.